**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

-------------------------------------------------------------- **X**
                                                       **:**

**PERFORMANCE ADDITIVES, LLC.,**          **:**

                                               **:**

         **Plaintiff,**                               **:**

                                               **:**

           *v.*                                    **:**          **22-cv-00044**

                                               **:**

**UNITED STATES OF AMERICA**           **:**

          **Defendant.**                         **:**

-------------------------------------------------------------- **·X**

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

John P. Donohue
100 N. 18th Street, Ste. 300
Philadelphia, PA 19103
(267) 207-3421
jdonohue@npwny.com

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: August 31, 2023

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT..................................................................1

STATEMENT OF FACTS ...........................................................................................2

I.      Facts Relating to the Drawback Claims...........................................................3

II.     Facts Relating to the Denial of Drawback Claims............................................5

III.    The Drawback Claims at Issue in Complaint. ..................................................6

        A.      Drawback Claim B10-0003408-1.........................................................6

        B.      Drawback Claim B10-0004498-1.........................................................7

STANDARD OF REVIEW ..........................................................................................9

ARGUMENT ...............................................................................................................10

I.      Evolution of the Drawback Statute and its Administration. ...........................10

        A.      Avoiding "Double Refunds" of Duties Claimed as Drawbacks. ...........12

        B.      The Current Statutory Scheme Under 19 U.S.C. § 1504. ....................14

II.     Drawback Claim B10-0003408-1 was Deemed Liquidated by Operation of Law
        Pursuant to 19 U.S.C. § 1504(b)(2). .............................................................17

III.    Drawback Claim B10-0004498-1 was Deemed Liquidated by Operation of Law
        Pursuant to 19 U.S.C. § 1504(a)(2)(A). .........................................................18

CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

**-Cases**
*Anderson v. Liberty Lobby* 477 U.S. 242 (1986) ........................................................... 9
*Avia Group Int'l v. LA Gear Cal. Inc.* 853 F. 2d 1557 (Fed. Cir. 1988) ...................... 9
*Dal-Tile Corp. v. United States*, 829 F. Supp. 394 (Ct. Intl. Tr. 1993) ....................... 15
*Ford Motor Company v. United States*, 44 F. Supp. 3d 1330 (Ct. Int. Tr. 2015)............ 10, 12, 21
*Geo. Wm. Rueff, Inc. v. United States*, 13 Cust. Ct. 232 (1944) ............................... 14, 21
*Goodman Mfg. L.P v. United States,* 69 F.3d 505 (Fed. Cir. 1995). ............................ 9
*Hartog Foods Int'l, Inc. v. United States,* 291 F.3d 789 (Fed. Cir. 2002)................... 10
*Int'l Cargo & Surety Ins. Co. v. United States,* 15 C.I.T. 541 (1991). ......................... 15
*Int'l Trading Co. v. United States*, 281 F. 3d 1268 (Ct. Intl. Tr. 2002). ...................... 15
*Invotech Aviation v. United States*, 21 C.I.T. 1392 (1997)......................................... 9
*Shell Oil Co. v. United States*, 688 F. 3d. 1376 (Fed. Cir. 2012)................................ 10
*St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763 (Fed. Cir. 1993). .......... 15
*Tabacos de Wilson Inc. v. United States,* 2018 Ct. Int'l Tr. LEXIS 147 (2018). .......... 4
*United States v Champion Coated Paper Co.*, 22 C.C.P.A. 414 (1934)............................ 13, 21
*Universal Electronics Inc. v. United States*, 112 F.3d 488 (Fed. Cir. 1997) ................ 9

**Statutes**
19 U.S.C. § 1313 ................................................................................................ passim
19 U.S.C. § 1500 ........................................................................................ 2, 8, 15, 18
19 U.S.C. § 1501 ........................................................................................... 2, 21
19 U.S.C. § 1504 ................................................................................................ passim
19 U.S.C. § 1514 ..................................................................................................... 2
19 U.S.C. § 1515 ..................................................................................................... 3
19 U.S.C. § 1677 ..................................................................................................... 4
19 U.S.C. § 2411 ..................................................................................................... 4
28 U.S.C. § 1581 ..................................................................................................... 3
28 U.S.C. § 2637 ..................................................................................................... 6
28 U.S.C. § 2639 ..................................................................................................... 9

**Other Authorities**
Act of Tariff July 4, 1789, 1 Stat. 24. ................................................................... 10
Customs and Trade Act of 1990, Pub. L. 101-382, 104 Stat. 629 (1990). ................. 11
S. Rep. 95-778, 95th Cong. 2nd Sess. 1 (1978) ....................................................... 15
Trade Facilitation and Trade Enforcement Act of 2015, Pub .L. 114-125 (2016). ........ 4
Trade Facilitation and Trade Enforcement Act of 2015, Pub L. 114-125, 130 Stat. 122
   (2016)................................................................................................................. 11

**Regulations**
19 C.F.R. § 190.81 ................................................................................................ 20
19 C.F.R. § 190.92 ................................................................................................ passim
19 C.F.R. § 191.173 .............................................................................................. 11
19 C.F.R. § 191.174 .............................................................................................. 11
19 C.F.R. § 191.92 ........................................................................................... 3, 4, 16

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**
-----------------------------------------------------------------**X**
                                     :

**PERFORMANCE ADDITIVES, LLC.,**       :
                                       :

        **Plaintiff,**              :

                                       :

        *v.*                  :          **22-cv-00044**

                                       :

**UNITED STATES OF AMERICA**       :
        **Defendant.**           :
-----------------------------------------------------------------**·X**

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Performance Additives LLC, ("Performance Additives"), submits this brief in support of its Motion for Summary Judgment pursuant to Rule 56 of the Rules of the United States Court of International Trade (hereinafter "USCIT R"), and urges this Court to sustain Plaintiff's two protests which challenged the denial by United States Customs and Border Protection ("CBP" or "Customs"), in liquidation, of certain claims[1] for duty drawback which Plaintiff filed pursuant to subsection (p) of Section 313 of the Tariff Act of 1930, as amended 19 U.S.C. § 1313(p).

As discussed herein, CBP's liquidations—which sought to deny Plaintiff's drawback claims—were void *ab initio* since the claims in question had previously been "deemed liquidated" at the amounts previously stated by Plaintiff in its drawback claims. For one of the two claims in question, the deemed liquidation occurred pursuant to Section 504(a)(2)(A) of the Tariff Act of 1930, as amended 19 U.S.C. § 1504(a)(2)(A). The other claim was deemed liquidated by operation of the time limits set out in 19 U.S.C. § 1504(b).

---

[1]This action involves both "import entries" and "drawback entries." For avoidance of confusion, we will refer to import entries in this brief as "entries" and will refer to drawback entries as "claims," the term with which they were historically and are colloquially described.

This action involves the interplay of the drawback statute, 19 U.S.C. § 1313, and the statute limiting the liquidation of import consumption entries and drawback claims, 19 U.S.C. § 1504. Despite the complexity of some of these rules, the resolution of this case is simple.

## STATEMENT OF FACTS

In accordance with USCIT R. 56.3 a Statement of Material Facts Not in Dispute is submitted herewith and incorporated by reference.

Plaintiff submitted two claims for petroleum derivative substitution drawback, 19 U.S.C. § 1313(p), in each case designating various entries of imported, duty paid merchandise as the basis of the drawback claims.

In both instances, CBP liquidated the designated import entries pursuant to 19 U.S.C. § 1500 within one (1) year after the drawback claims were filed. CBP did not reliquidate any of the designated import entries pursuant to 19 U.S.C. § 1501, and Performance Additives did not protest the liquidation of any of the designated import entries. Thus, the liquidations were final, as provided in 19 U.S.C. § 1514(a).[2]

---

[2] 19 U.S.C. § 1514(a) ("Protest against decisions of Customs Service"), provides in relevant part:

(a) Finality of decisions; return of papers

Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds), and section 6501 of title 26 (but only with respect to taxes imposed under chapters 51 and 52 of such title), any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—

*          *          *

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the

For the reasons set out herein, Plaintiff submits that one of the drawback claims was liquidated, by operation of law, one-year after its date of filing. The other was deemed liquidated two years after its date of filing, or on the 4th anniversary of filing, as prescribed by different subsections of 19 U.S.C. § 1504(a)(2). In both instances, the claims were deemed liquidated at the amount of drawback specified in the claim.[3]

Subsequently, CBP purported to liquidate the drawback claims, disallowing drawback in both instances. As discussed herein, the claims had previously been liquidated by operation of law, and CBP's protested liquidations were unlawful and void. Following denials of its protests, Plaintiff timely filed this action pursuant to 19 U.S.C. § 1515. This Court has exclusive subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1581(a).

## I.      Facts Relating to the Drawback Claims.

Plaintiff, Performance Additives, is a Limited Liability Company doing business in Southern Pines, North Carolina, and Yardley, Pennsylvania. The Company is managed by a father and son team: Arthur Van Nostrand, Senior and Junior.

---

liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;

(6) the refusal to pay a claim for drawback

\*           \*           \*

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

[3] Plaintiff has previously received accelerated payment of the drawback claimed on one of the entries pursuant to 19 C.F.R. §§ 190.92 and 191.92, but repaid the same to the government.

Performance Additives imports chemical polymers for resale in the United States to a variety of customers. The imported materials are inputs used in the production of a variety of other chemicals and manufactured goods. The imported chemicals are petroleum derivatives classified under various provisions of Chapter 39 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Because many of the imported chemicals are "products of China," beginning in 2018, additional 25% *ad valorem* retaliatory duties were imposed pursuant to Section 301 of the Trade Act of 1974, *see e.g.*, 19 U.S.C. § 2411, in addition to ordinary duties. Unlike antidumping and countervailing duties imposed under 19 U.S.C. § 1677, Section 301 duties are considered regular duties and are therefore eligible to be designated for drawback. Plaintiff's drawback claims sought drawback of duties paid on imported "qualifying" products, based on the exportation of eligible, substituted petroleum derivatives.

Consistent with the Customs regulations, Plaintiff filed an application for drawback privileges and accelerated payment of drawback on May 6, 2015.[4] On June 11, 2015 CBP approved both applications. In filing its drawback application, Plaintiff sought the advice of a drawback broker and a consultant but did not seek legal counsel.[5]   Consistent with its implementing regulations and administration of the statute, Customs reviewed Plaintiff's initial drawback claim and found no irregularities.  Customs made accelerated payments of drawback to Plaintiff from

---

[4] *See* 19 C.F.R. § 190.92. Accelerated payment of drawback is a regulatory grant which allows for the payment of drawback to the drawback claimant before the liquidation of the drawback claim, provided that certain conditions (e.g., posting of bond) can be met. Section 190.92 was adopted in late 2018, to implement the drawback provisions set out in Section 906 of the Trade Facilitation and Trade Enforcement Act of 2015, Pub .L. 114-125 (2016). Prior to the effective date of 19 C.F.R. Part 190, accelerated payment of drawback was authorized by a substantially identical regulation codified at 19 C.F.R. § 191.92. *See Tabacos de Wilson Inc. v. United States,* 2018 Ct. Int'l Tr. LEXIS 147 (2018).

[5] Whether the drawback claims satisfied all legal requirements for drawback is not an issue in this action, and Plaintiff does not address it. This action considers only the timeliness and legalities of CBP's protested liquidations of the claims without payment of drawback.

about June of 2016 to June of 2020, but did not affirmatively liquidate many of the underlying

drawback claims, a circumstance which is not uncommon.

## II.    Facts Relating to the Denial of Drawback Claims.

On July 28, 2020, Customs advised Plaintiff that its accelerated payment of drawback

privileges were suspended; and shortly thereafter, the agency liquidated without benefit of

drawback all drawback claims it alleged were unliquidated at that time. CBP acted without regard

for the date of the drawback claim or the liquidation status of the import entries designated as the

basis of the drawback claims.

Thus, drawback claims filed as long ago as 2016 were liquidated without benefit of

drawback, and this included both claims on which accelerated payment had been paid, and those

on which it had not been paid.[6] More than forty (40) such claims were liquidated, but only two are

the subject of this litigation.[7]

Perhaps even more surprising, the stated reason for the denial of both protests was that:

Drawback claim did not liquidate by operation of law in accordance within 19 USC
1504(a)(2)(B); all designated [underlying consumption] entries were not liquidated
and final within one year of the claim having been filed.

*See* ECF 7-1 at 2, ECF 7-2 at 2. As we will demonstrate below, as to one of the two claims, (the

2016 claim) the Customs position is obviously wrong on its face.  As to the other protest it is

incorrect upon examination of the facts.

---

[6] Accelerated drawback was not paid on the drawback claims which are the subject of this
action.

[7] The remaining drawback denials were protested and, upon denial of the protests, were
summoned to this Court in *Performance Additives LLC v. United States*, Ct. Int'l Tr. Court No.
22-86.

### III.    The Drawback Claims at Issue.

Plaintiff's Complaint addresses only two drawback claims, both filed with CBP's Newark, New Jersey drawback center. *See* ECF 7. The merits of the drawback claims are not before the Court in this litigation; rather, only issues arising from liquidation are before this Court.

### A.    Drawback Claim B10-0003408-1.

Drawback claim B10-0003408-1 was filed on March 8, 2016. The claimed recovery was $91,291.83 in drawback pursuant to 19 U.S.C. § 1313(p) and Plaintiff received accelerated payment of drawback in that amount, which it later repaid. Customs extended liquidation of this claim once, pursuant to 19 U.S.C. § 1504(b), while it conducted a "desk audit," which serves as a standard verification of the initial drawback claim.

More than five (5) years after the date of the claim, and over four years after it had made accelerated payment, on April 30, 2021, Customs liquidated the claim "no drawback."[8] Since drawback funds were paid shortly after the claim was filed, the effect of the liquidation was to demand a "clawback" of the $91,291.83 already paid out by the Government. Plaintiff returned the clawed back funds to CBP.[9] This action now seeks (i) a declaration from this Court finding

---

[8] This is also more than one-year after the maximum liquidation time which would have attached had the Government extended liquidation within one-year after filing of the drawback claim. *See* 19 U.S.C. § 1504(b).

[9] Ordinarily, a litigant must pay all liquidated duties, charges or exactions prior to commencing an action to challenge the denial of a protest. *See* 28 U.S.C. § 2637(a). Repayment of accelerated drawback payments is not a condition precedent to commencing an action challenging denial of a protest against the refusal to pay a claim for drawback. Rather, accelerated payment of drawback is a contractual arrangement with Customs, secured by a bond declaring Customs to be a third party beneficiary of the contract. Thus, 19 C.F.R. § 190.92(a) notes, in pertinent part, that "Accelerated payment of a drawback claim does not constitute liquidation of the drawback entry." Hence, monies received under the accelerated payment regulation do not constitute "liquidated duties."

CBP's liquidation of April 30, 2021 void *ab initio* as time-barred; and (ii) to have the drawback funds returned to Plaintiff.

As noted in Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute, drawback claim B10-0003408-1 identified thirty-one (31) consumption entries of merchandise as the basis for the drawback claim. Those import entries liquidated on various dates between July 8, 2016, and December 30, 2016. These liquidation dates are each *before* the one-year anniversary of the filing of the drawback claim—*i.e.,* before April 30, 2017.

Customs' noticed extension of liquidation of this drawback claim pursuant to 19 U.S.C. § 1504(b) prevented the "deemed drawback" provision of 19 U.S.C. § 1504(a)(2)(A) from operating in this instance. But even had Customs provided further valid notices of extension, the claim would have been deemed liquidated on the fourth anniversary of the date of the claim—*i.e.,* March 8, 2020. Customs asserts that the claim was liquidated by act of the Customs officer on May 14, 2021, but by that time the drawback claim had been liquidated by operation of law well over a year prior, and well past the maximum time to extend liquidation of a drawback claim. Thus, this claim liquidated by operation of law no later than March 8, 2020. Customs had to have known that when it denied the protest on the grounds that the underlying consumption entries, now over five years old, had not liquidated. Their own records told them that this basis for denial is wholly without merit.

## B.    Drawback Claim B10-0004498-1.

Drawback claim B10-0004498-1 is a 19 U.S.C. § 1313(p) drawback claim which was filed on March 10, 2020 and whose liquidation was not extended by Customs. Plaintiff contends that

this claim liquidated by operation of law on March 10, 2021.[10] The claimed recovery in this claim was $1,328,589.84.[11]

As reflected in Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute, drawback claim B10-0004498-1 identified forty-eight (48) consumption entries of imported merchandise as the basis of the drawback claim. Those import entries liquidated on various dates between May 29, 2020, and October 27, 2020. Thus, all of the designated entries had been liquidated prior to the one-year anniversary date of the filing of the claim—to wit, March 10, 2021.[12] March 10, 2021, of course, the first anniversary of the date of the filing of the claim, became its date of liquidation because it was not extended.

Customs purported to "liquidate" this claim pursuant to 19 U.S.C. § 1500 on May 14, 2021, but the claim had already been liquidated by operation of law.[13]

Plaintiff protested CBP's liquidations as untimely, and upon denial of its protest, commenced the instant action. CBP asserted, incorrectly, that some of the underlying import entries remained unliquidated one-year after the claims were filed.

---

[10] We note that there were several drawback claims, not the subject of this litigation, liquidated by Customs within the time permitted under section 504 of the 1930 Act, as amended, 19 U.S.C. § 1504, and which suffered from technical defects. Some of those claims had been subject to accelerated payment of drawback; others had not. In those claims in which accelerated payment had been made, and were timely liquidated, the Plaintiff returned the drawback funds and did not protest, or withdrew a protective protest.

[11] The magnitude of the difference between the drawback claimed on the 2020 claim and that on the 2016 claim reflects the assessment of 25% *ad valorem* retaliatory duties on the latter claim's designated imports, pursuant to Section 301 of the Trade Act of 1974.

[12] No accelerated payments of drawback were received in respect of this drawback claim.

[13] CBP's Automated Commercial Environment ("ACE") confirms that the May 14, 2021 action was a 19 U.S.C. § 1500 liquidation, and not a 19 U.S.C. § 1501 reliquidation. *See* 56.3 Statement, Exhibit B.

8

As demonstrated herein, there is nothing unclear about the operation of 19 U.S.C. § 1504(a)(2)(A). Generally, "an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim." *Id.* Where, as here, Customs did not extend the period for liquidating one of the drawback claims pursuant to 19 U.S.C. § 1504(b), the claim is "deemed liquidated" one-year after filing pursuant to the general rule set out in 19 U.S.C. §1504(a)(2)(A). There are three exceptions to the general rule, but none apply here. The second claim was deemed liquidated pursuant to the time limits set out in 19 U.S.C. §1504(b).

## STANDARD OF REVIEW

Summary judgment is appropriate under USCIT R. 56 when there is "no genuine dispute as to any material fact." *See Anderson v. Liberty Lobby* 477 U.S. 242, 249 (1986); *Avia Group Int'l v. LA Gear Cal. Inc.* 853 F. 2d 1557, 1560 (Fed. Cir. 1988); *Invotech Aviation v. United States*, 21 C.I.T. 1392, 1394 (1997). The dates of the claims and contents of the two drawback claims under review are undisputed, as are the claimed dates of liquidation by Customs.

Pursuant to 28 U.S.C. §2639(a)(1), Customs is presumed to have found all facts necessary to support its liquidation decision. But where, as here, there are no disputes as to material questions of fact, the "presumption of correctness" falls away and the matter resolves into a pure question of law. *See Universal Electronics Inc. v. United States*, 112 F.3d 488, 492-93 (Fed. Cir. 1997); *Goodman Mfg. L.P v. United States,* 69 F.3d 505, 508 (Fed. Cir. 1995).

# ARGUMENT

## I.     Evolution of the Drawback Statute and its Administration.

The duty drawback law was part of the Tariff Act of 1789, which was the second law enacted by the First Session of the First Congress of the United States.[14] The goal of the drawback law was simple. The First Congress wanted to increase the manufacturing potential of the new country, and the drawback law had as its goal an increase in imports of raw materials; the use of those materials in the production of goods in the United States; and the exportation of those goods to foreign markets. Drawback refunds do not compensate for duty overpayments, but instead help enforce the United States' policy of "encouraging domestic manufacture of articles for export and … allowing those articles to compete fairly in the world marketplace." *See Hartog Foods Int'l, Inc. v. United States,* 291 F.3d 789, 793 (Fed. Cir. 2002); *see also Shell Oil Co. v. United States,* 688 F. 3d. 1376, 1382 (Fed. Cir. 2012); *Ford Motor Company v. United States*, 44 F. Supp. 3d 1330, 1334 (Ct. Int. Tr. 2015).

In its original 20th Century format, the drawback law was very simple. It provided that, upon the export of articles made in the United States with the use of imported materials, 99% of the duties paid on such imported materials would be refunded as drawback.[15] "Direct identification manufacturing drawback" remains a part of the law today, codified at 19 U.S.C. § 1313(a).

Over time, the drawback law has grown in complexity, as has the American manufacturing base it supports. The law was expanded to include "substitution manufacturing drawback," 19 U.S.C. § 1313(b), providing drawback of duties on imported materials where exports were made with "substituted" domestic or duty-free materials; to provide for "direct identification unused

---

[14] Act of Tariff July 4, 1789, ch. 2, Sec. 3, 1 Stat. 24, 26–27.

[15] The remaining 1% not available for refund is a set-aside by Congress to administer the program.

merchandise" drawback, 19 U.S.C. § 1313(j)(1), in cases where imported, duty paid goods were exported without having been "used" in the United States; to provide drawback for of duties paid on imported goods where substitutable goods are exported, 19 U.S.C. § 1313(j)(2), and to provide for drawback for merchandise not conforming to sample or specification, 19 U.S.C. § 1313(c).

Most recently, Section 906 of the Trade Facilitation and Trade Enforcement Act of 2015,[16] greatly expanded the drawback program by liberalizing the criteria for substitution under 19 U.S.C. §§ 1313(b) and 1313(j)(2).

In 1990 the Congress added a new provision allowing drawback recoveries for designated and substituted petroleum derivatives.[17] Subsection (p) of the Tariff Act of 1930, as amended 19 U.S.C. § 1313(p), allows payment of drawback with respect to imported petroleum substitutes which are "qualifying products" based upon the exportation, within a stated time, of substituted petroleum derivatives. Thus, if X. Corp. imports and pays duty on certain "qualifying" petroleum derivatives, and sells or exchanges them with Y Corp., and Y Corp. then acquires a good made with the use of a qualifying article, or substitutes of such articles, and either exports, or sells the goods to a third party for export, the exporter may claim drawback in respect of the imported "qualifying articles." *See* 19 C.F.R. §§ 191.173(c), 174(c)).

At the time of its adoption, the petroleum derivatives drawback law, 19 U.S.C. § 1313(p), offered superior flexibility to the substitution unused merchandise drawback statute, 19 U.S.C. § 1313(j)(2), since (i) it allowed substitution of goods on a more liberal, tariff classification-based standard; and (ii) it did not contain the "possession" requirements that the latter statute did.

---

[16] *See* Trade Facilitation and Trade Enforcement Act of 2015, Pub L. 114-125, § 906, 130 Stat. 122 (2016).

[17] *See* Customs and Trade Act of 1990, Pub. L. 101-382, § 484A(a), 104 Stat. 629, 707 (1990).

A.        Avoiding "Double Refunds" of Duties Claimed as Drawbacks.

Throughout the lengthy history of the drawback statute, Customs has always worked to find ways to prevent "double refunds" of duties—for example, the payment of a drawback refund, and a second refund based on the liquidation or reliquidation of the import entries identified in the drawback claim. Historically, Customs has been unwilling to "liquidate" a drawback claim until all import entries designated in the claim have themselves been finally liquidated.

As the Government explained to this court a few years ago:

19 U.S.C. § 1504(a)(1) is the deemed liquidation provision governing consumption entries and 19 U.S.C. § 1504(a)(2) is the deemed liquidation provision governing drawback entries (also referred to as drawback claims). One of the fundamental concerns CBP faces in administering the drawback law is carrying out the Congressional mandate that there be no double refunds of duties. See, e.g., 19 U.S.C. § 1313(j) (stating "upon such exportation or destruction 99 percent of the amount of each duty, tax, or fee so paid shall be refunded as drawback.")  As we discuss below, the administrative structure created for processing drawback claims is designed to ensure that the two deemed liquidation provisions (19 U.S.C. § 1504(a)(1) and (2)) operate in harmony and prevent double refunds.

Defendant's Supplemental Brief at 3, *Ford Motor Co. v. United States*, Court No. 09-00375, (August 16, 2013), ECF No. 156.[18] To effectuate this goal, the Government has explained that CBP's drawback specialists generally do not begin to "work" a drawback claim until all of the import entries designated therein have been liquidated, so that drawback funds are being paid on the basis of "liquidated" duty assessments rather than "estimated" duty deposits. As the Government explained in its Supplemental Briefing in *Ford Motor Co*:

CBP processes drawback claims after the underlying import entries become final for two important reasons: (1) it would not be feasible to process the drawback claims first; and (2) processing drawback claims after the underlying entries become final prevents the improper double refund of duties.

---

[18] Case decision reported at *Ford Motor Co. v. United States*, 44 F. Supp.3d 1330, 1334 (Ct. Int'l Tr. 2015)

*Id.* The Government elaborated on the second reason regarding risks of double refunds in *Ford Motor Co.* (*id.* at 4-5), stating that:

> … if CBP were to process drawback claims before all underlying entries have become final, there is the potential for improper double refund of duties. This would happen if, for example, CBP's drawback office in Chicago processes a drawback claim based on estimated duties deposited at the time of entry and refunds 99% of the estimated duties paid, and then the Port of Miami and the Port of Long Beach estimated duties are in excess of actual duties owed. When the ports liquidate the entries and refund the excess import duties to the importer of record, a double refund of duty will have occurred—first, when the drawback office refunded estimated duties paid as a part of the drawback claim and again, when the underlying import entries were liquidated by the ports.

Avoiding duplicate refunds of duty when drawback is being claimed is a century-old problem. Years ago, there were no statutory time limits on the liquidation of import entries, nor of drawback claims. However, the courts struck a balance between the need to avoid payments of duplicate refunds, and the trade community's right to pursue available remedies. An earlier version of the drawback law required claimants to submit with their claims "certificates of importation," which confirmed that import entries designated in a drawback claim had been finally liquidated. Customs then issued a regulation requiring drawback claims to be filed no later than two-years after departure of the exporting vessel. In *United States v Champion Coated Paper Co.*, 22 C.C.P.A. 414 (1934), several claimants were denied drawback where they could not file their "certificates of importation" within two years of exportation—in some cases because entries had not liquidated, and in others because the importer had a pending protest or appeal for appraisement. The Court of Appeals struck down Customs' regulation establishing the two-year limit on claim filing as unreasonable:

> We cannot believe that by the enactment of Section 313, Tariff Act of 1922, the drawback section, Congress intended that anyone entitled to protest or appeal to reappraisement should be required to waive any rights he might have in the prosecution of such proceedings in order that he might secure a certificate of importation, which was essential to the completion of the drawback claim.  The

13

Government's suggestion that this is the normal way of transacting this kind of business, and that as a matter of practice anyone who exports and claims drawback abandons reappraisement or protest proceedings, does not seem to require the conclusion that said section 313 necessarily contemplated this result.  It is true enough that in most instances there would not be much of a financial interest left to prompt litigation after 99% of the duty had been refunded; nevertheless, it is quite apparent that one percentum or a certain part of such one percentum might properly be the subject of litigation and which, under the regulations above quoted, might have to be abandoned or waived before the drawback entries could be filed.  The fact that one percentum or a part of one percentum of the duty paid would be a small part of the whole amount of duty paid, in our view, does not minimize the importance of the principle involved .

Subsequently, in *Geo. Wm. Rueff, Inc. v. United States*, 13 Cust. Ct. 232, 235 (1944), the law provided that a drawback claim could not be liquidated until all designated import entries had been liquidated. A two year post-exportation limitation on filing a drawback claim was also imposed. However, the successor regulation required only that, within the two year period, *applications* for certificates of importation be made. The Court held that the regulation did not force the drawback claimant to give up legal rights, and therefore upheld it as reasonable. *Id.* at 235.

Today's statutory scheme seeks to achieve the same result—*i.e.,* the liquidation of drawback claims only after all designated import entries are liquidated. It also seeks to eliminate backlogs of drawback claims by requiring they be liquidated promptly after the import entries have been so finalized.

### B.    The Current Statutory Scheme Under 19 U.S.C. § 1504.

Historically, there were no laws which limited the time in which Customs was required to liquidate an import entry. Import entries were, and continue to be, liquidated by Customs officers

in accordance with Section 500 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1500.[19] In 1984, however, Congress enacted what is currently Section 504(a)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1504(a)(1), which provided that all import entries not liquidated within one-year after their entry dates were "deemed liquidated" at the rate and amount of duty asserted in the entry.[20] CBP was given the power, for good cause, to extend the liquidation period, by up to three (3) additional one-year periods, up to a maximum of four (4) years from entry. *See* 19 U.S.C.

---

[19] 19 U.S.C. § 1500, provides:

The Customs Service shall, under rules and regulations prescribed by the Secretary—

fix the final appraisement of merchandise by ascertaining or estimating the value thereof, under section 1401a of this title, by all reasonable ways and means in his power, any statement of cost or costs of production in any invoice, affidavit, declaration, other document to the contrary notwithstanding;

(a) fix the final classification and rate of duty applicable to such merchandise;

(b) fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited;

(c) liquidate the entry and reconciliation, if any, of such merchandise; and

(d) give or transmit, pursuant to an electronic data interchange system, notice of such liquidation to the importer, his consignee, or agent in such form and manner as the Secretary shall by regulation prescribe.

[20] The legislation was enacted in connection with implementation of the Tokyo Round of Trade Agreements, and the legislative history accompanying the 1978 legislation stated that the measure was enacted to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." S. Rep. 95-778, 95th Cong. 2nd Sess. 1, 32 (1978), reprinted in 1978 U.S.C.C.A.N. 2211, 2243. See, *Dal-Tile Corp. v. United States*, 829 F. Supp. 394, 399 (Ct. Intl. Tr. 1993); *See also Int'l Trading Co. v. United States*, 281 F. 3d 1268 (Ct. Intl. Tr. 2002). Before that time, "there was no statutory restriction on the length of time Customs could take to liquidate an entry." *Id.* at 1273; *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 767 (Fed. Cir. 1993). "Customs could delay liquidation as long as it pleased, with or without giving notice." *Int'l Cargo & Surety Ins. Co. v. United States,* 15 C.I.T. 541, 543 (1991).

§ 1504(b). Finality of liquidation could also be avoided indefinitely if the liquidation of the entry was suspended by statute or court order.

No limitation was placed on the liquidation of drawback claims, although selected claimants who were able to post a bond could obtain "accelerated payment" of drawback amounts, pending final liquidation of their claims. *See* 19 C.F.R. § 191.92 (in effect through November 8, 2018); 19 C.F.R. § 190.92 (effective November 8, 2018).

By 2004, however, Congress had become concerned about the growing backlog of unliquidated drawback claims. To that end, Section 2102 of the Miscellaneous Tariff and Technical Corrections Act of 2004, enacted Section 504 (a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1504(a)(2), which creates a two-tiered system for liquidation of drawback claims. These "tiers" are examined below.[21]

**Tier 1:** Under 19 U.S.C. § 1504(a)(2)(A), if all import entries identified in the drawback claim have been liquidated within one-year after the filing of the drawback claim, then CBP *must* liquidate the drawback claim within one-year after the claim's filing. CBP's failure to affirmatively liquidate the drawback claim within the one-year anniversary causes the claim to be "deemed liquidated" at the amount of drawback asserted in the claim. *Id.* CBP has the power to extend the one-year "deemed liquidation" period for such claims up to three (3) times. *See* 19 U.S.C. § 1504(b), upon giving notice to the importer of record or drawback claimant, and the surety of the importer or drawback claimant.[22] Thus, "Tier 1" claims are subject to firm limits on timeliness of liquidation.

---

[21] The "tiers" are Plaintiff's designations, not a statutory term of art.

[22] A drawback claimant will have a surety only if it is receiving accelerated payment of drawback pursuant to 19 C.F.R. § 190.92.

**Tier 2:** On the other hand, if the import entries designated in the drawback claim have *not* liquidated within one-year after the filing of the drawback claim, Section 504(a)(2)(A)'s "deemed liquidation" provision does not come into play, and Customs is under *no* time constraints for liquidating the drawback claim. However, as noted herein, the law gives the claimant of a "Tier 2" drawback claim a way to force the liquidation of the drawback claim based on estimated duties from designated import entries not finally liquidated.

As discussed herein, both drawback claims at bar are "Tier 1" claims, and therefore are subject to statutory time limits on liquidation. Both were liquidated by operation of law, pursuant to 19 U.S.C. § 1504, but under different subsections of the statute.

## II. Drawback Claim B10-0003408-1 was Deemed Liquidated by Operation of Law Pursuant to 19 U.S.C. § 1504(b)(2).

As noted above, and in Plaintiff's Rule 56.3 statement, drawback claim B10-0003408-1 was filed on March 8, 2016. All of the designated entries had liquidated before the one-year anniversary of the filing—*i.e.,* by March 8, 2017. This designates the claim as a "Tier 1" claim, subject to the one-year "deemed liquidation" rule of 19 U.S.C. § 1504(a)(2)(A).

However, Customs extended liquidation while it completed its desk audit of the claim. This action makes applicable 19 U.S.C. § 1504(b), which provides:

> **(b)Extension**
>
> The Secretary of the Treasury may extend the period in which to liquidate an entry if—
>
> 1) the information needed for the proper appraisement or classification of the imported or withdrawn merchandise, or for determining the correct drawback amount, or for ensuring compliance with applicable law, is not available to the Customs Service; or
>
> 2) the importer of record or drawback claimant, as the case may be, requests such extension and shows good cause therefor.

17

The Secretary shall give notice of an extension under this subsection to the importer of record or drawback claimant, as the case may be, and the surety of such importer of record or drawback claimant. Notice shall be in such form and manner (which may include electronic transmittal) as the Secretary shall by regulation prescribe. Any entry the liquidation of which is extended under this subsection shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record, or the drawback amount asserted by the drawback claimant, at the expiration of 4 years from the applicable date specified in subsection (a).

Indeed, Customs extended liquidation of this claim once, which in turn extended the "deemed liquidation" date to March 8, 2018. Absent any further extensions, the drawback claim liquidated "by operation of law" on March 8, 2018. And even if further extensions were given, the claim would have been deemed liquidated on the fourth anniversary of its filing—to wit, March 8, 2020. Under these circumstances, CBP's purported liquidation on April 30, 2021—protested by Plaintiff—is untimely and void.

## III.    Drawback Claim B10-0004498-1 was Deemed Liquidated by Operation of Law Pursuant to 19 U.S.C. § 1504(a)(2)(A).

As noted above, and in Plaintiff's Rule 56.3 Statement, drawback claim B10-00044981 was filed on March 10, 2020. All of the import entries designated therein were liquidated within one-year of the filing of the claim. Thus, this is a "Tier 1" claim, subject to the one-year deemed liquidation rule. Customs did not extend liquidation of this claim, and it liquidated by operation of law on March 10, 2021, one-year after its filing. Customs' purported 19 U.S.C. § 1500 liquidation on May 14, 2021 was untimely and void.

The **Tier 1** "deemed liquidation rule" of 19 U.S.C. § 1504(a)(2)(A), provides:

(2) Entries or claims for drawback

   (A) In general

   Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from

18

the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

This statutory rule of "deemed liquidation" is subject to only three exceptions. <u>First</u>, CBP may extend the period for liquidating the drawback claim even if all the designated import entries have liquidated within the one-year anniversary of filing the drawback claim. CBP did not do that in the case of drawback claim B10-0004498-1. Nor was liquidation of any the import entries suspended pursuant to statute or court order.

The <u>second exception</u> is provided at 19 U.S.C. § 1504(a)(2)(B), and describes a situation not presented here. Section 504(a)(2)(B) provides a mechanism by which a claimant can force liquidation of its drawback claim, even if the designated import entries were not liquidated and final one-year after the drawback claims were filed. The statute provides:

(B) Unliquidated imports.

An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), or within the 1-year period described in subparagraph (C), shall be deemed liquidated upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to payment or refund under other provisions of law. The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

This subsection (B) does not apply to claim B10-0004498-1 as there were no "unliquidated imports" when the one-year period specified in Section 1504(a)(2)(A) expired.

Since filing of an import entry necessarily precedes the filing of a drawback claim, and the import entry is required to be liquidated within one-year, one would expect the "deemed liquidated" rule of § 1504(a)(2)(A) to apply in most cases. However, there are situations where this may not be so—*e.g.,* if liquidation of one of the designated import entries has been extended

by Customs, or if liquidation of one of more of the designated entries is suspended under the antidumping or countervailing duty statutes or pursuant to a court order. Such problematic entries may account for only a small portion of the drawback claim. Rather than force the drawback claimant to wait many years for its claim to be processed,[23] Section 1504(a)(2)(B) allows the claimant to receive its drawback funds, subject to conditions set out in the Customs Regulations.[24]

---

[23] A delay in liquidation of a drawback claim may be unimportant to a claimant who has received accelerated payment of drawback under 19 C.F.R. § 190.92. However, the accelerated payment privilege requires the posting of a dollar-for-dollar surety bond. Many drawback claimants do not have the financial wherewithal to obtain such a bond. Even when a bond is obtained, if there are too many unliquidated drawback claims, the surety may refuse to bond additional claims, or the claimant may not be able to afford additional bonding. By providing for deemed liquidation upon payment of estimated duties and written request, 19 U.S.C. § 1504(a)(2)(B) not only allows the claimant to receive its drawback, but relieves the financial pressure on claimants and their bond sureties.

[24] The relevant regulation, 19 C.F.R. § 190.81(b) ("Claims based on estimated duties"), provides:

> (1) Drawback may be paid upon liquidation of a claim based on estimated duties if one or more of the designated import entries have not been liquidated, or the liquidation has not become final (because of a protest being filed) (see also § 173.4(c) of this chapter), only if the drawback claimant and any other party responsible for the payment of liquidated import duties each files a written request for payment of each drawback claim, waiving any right to payment or refund under other provisions of law, to the extent that the estimated duties on the unliquidated import entry are included in the drawback claim for which drawback on estimated duties is requested under this paragraph. The drawback claimant must, to the best of its knowledge, identify each import entry that has been protested and that is included in the drawback claim. A drawback entry, once finally liquidated on the basis of estimated duties pursuant to paragraph (e)(2) of this section, will not be adjusted by reason of a subsequent final liquidation of the import entry.

> (2) However, if final liquidation of the import entry discloses that the total amount of import duty is different from the total estimated duties deposited, except in those cases when drawback is 100% of the duty, the party responsible for the payment of liquidated duties, as applicable, will:

>> (i) Be liable for 1 percent of all increased duties found to be due on that portion of merchandise recorded on the drawback entry; or

>> (ii) Be entitled to a refund of 1 percent of all excess duties found to have been paid as estimated duties on that portion of the merchandise recorded on the drawback entry.

In this way, the current statutory scheme achieves the balance Congress has sought for decades, which—as discussed in the *Champion Coated Paper* and *Geo. Wm. Reuff* cases, *supra*— is designed to ensure that the processing of drawback claims will not result in "excessive refunds," while preserving importers' rights to pursue relief in respect of import entries designated in their drawback claims.

The <u>third exception</u> to the "deemed liquidation" rule for drawback claims, set out in 19 U.S.C. § 1504(a)(2)(C), was a "transitional rule" which required all drawback claims unliquidated as of December 3, 2004, to be liquidated within one-year of that date, or be "deemed liquidated." *See Ford Motor Co. v. United States,* 44 F. Supp. 3d 1330, 1334 (2015). That provision is inapplicable here.

Thus, the Section 504(a)(2)(A) conditions for "deemed liquidation" of Plaintiff's drawback claim B10-00044981, are met in this case. None of the three exceptions to that "general rule" apply here. Therefore, the claim liquidated by operation of law on March 10, 2021, Customs' subsequent attempted liquidation on May 14, 2021 was untimely and void.

---

This regulation allows the claimant to receive drawback based on estimated duty payments without forcing the importer (which may be the claimant or another person) to abandon any protests or claims it may have respecting the import entry – achieving the same balance sought to be preserved in *Champion Coated Paper* and *Geo. Wm. Rueff* cases, *supra*.

Remarkably, the procedure outlined in Section 504(b)(1)(B) doesn't merely authorize CBP to "work" a drawback claim based on estimated duties—it results in a deemed liquidation of the drawback claim as filed. This, presumably, leaves CBP only the 90-day reliquidation period, 19 U.S.C. § 1501, to make any corrections to the allowance of the claim.

## **CONCLUSION**

For the reasons set out herein, Plaintiff submits that summary judgment should be entered in its favor and its protest sustained.

Respectfully submitted,

NEVILLE PETERSON LLP
*Counsel for Plaintiff*


/s/ John P. Donohue
John P. Donohue
100 N. 18 th Street, Ste. 300
Philadelphia, PA 19103
(267) 207-3421
jdonohue@npwny.com

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: August 31, 2023

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**
-----------------------------------------------------------------X
PERFORMANCE ADDITIVES, LLC.,                                     :
                                                                :
        Plaintiff,                                    :
                                                                :
        *v.*                                          :            **22-cv-00044**
                                                                :
UNITED STATES OF AMERICA                                         :
        Defendant.                                    :
-----------------------------------------------------------------·X

## <u>CERTIFICATE OF COMPLIANCE</u>

      Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 7,106 words.

                                  Respectfully submitted,

                                  /s/ Patrick B. Klein
                                  Patrick B. Klein